In re the Matter of Brian David Sullivan:

Malvern Sullivan, Petitioner-Appellant,

v.

Waukesha County, Respondent.

Supreme Court

*No. 96–3376. Oral argument April 7, 1998.—Decided June 4, 1998.*

(On certification from the court of appeals.)

(Also reported in 578 N.W.2d 596.)

For the petitioner-appellant there were briefs (in the Supreme Court and Court of Appeals) by *William A. Denny, Jonathan Cermele, Joseph S. Heino* and *Denny & Yanisch*, Elm Grove and oral argument by *William A. Denny* and *Michael W. Steinhafel*.

For the respondent there was a brief and oral argument (in the Supreme Court) by *Danni L. Caldwell*, Waukesha County Corporation Counsel.

¶ 1. DONALD W. STEINMETZ, J. This case raises two issues for review:

(1) Which standard of review must a circuit court apply when conducting a hearing under Wis. Stat. § 69.12(1) (1993–94)[1] to determine whether a petitioner has established that information on a certificate of death "does not represent the actual facts in effect at the time" the certificate of death was filed?

(2) Did the circuit court erroneously exercise its discretion in refusing to receive into evidence under the Wis. Stat. § 908.03(8) hearsay exception for public records and reports a training pamphlet published by the Department of Transportation?

¶ 2. This case is before the court on certification from the court of appeals under Wis. Stat. § (Rule)

---

[1] Unless otherwise stated, all future references to Wis. Stats. are to the 1993–94 version of the statutes.

809.61. The court of appeals asks that this court clarify the circuit court's role in reviewing a certificate of death under Wis. Stat. § 69.12(1). After conducting an evidentiary hearing, the Circuit Court for Waukesha County, Patrick L. Snyder, Judge, denied Malvern Sullivan's petition under Wis. Stat. § 69.12(1) requesting that the circuit court amend her son's certificate of death so that the manner and cause of his death would be officially designated as something other than "suicide." The Petitioner appealed the circuit court's order, and the court of appeals requested certification.

¶ 3. The relevant facts of this case are simple. In the early morning hours of August 25, 1990, Brian Sullivan died from injuries he suffered from being struck by a train. The record establishes that, on the night of his death, Sullivan returned home from a night of socializing with friends and made his way approximately 70 feet from his home to a set of railroad tracks—a location familiar to Sullivan as a place he occasionally went to smoke cigarettes and marijuana. According to the railroad company's official report, Sullivan was sitting on the railroad tracks and never looked up as the train approached. Although the train crew blew the train's whistle and began to brake, they could not stop the train before it struck Sullivan. The crew of the train explained that because of a blind spot in front of the locomotive, they could not see if Sullivan attempted to escape being hit by the train. A medical toxicology report revealed that at the time of his death, Sullivan had a blood alcohol concentration of .165% by weight.

¶ 4. Due to the circumstances surrounding Sullivan's death, the Waukesha County Medical Examiner was required to conduct an investigation to determine the manner and cause of Sullivan's death. *See* Wis.

Stat. §§ 59.38 and 979.01 (1989–90). The Acting Medical Examiner, Paul Hibbard, conducted an investigation into Sullivan's death. The examiner reviewed the findings of the autopsy, reviewed statements made to police officers by the conductor of the train that struck Sullivan, and reviewed statements made by a number of Sullivan's friends and members of his family.

¶ 5.   Based on the information he gathered during his investigation, the examiner believed that Sullivan had been experiencing business and financial problems; that Sullivan's girlfriend of six years had recently ended their relationship; and that Sullivan looked at the approaching train, placed his head on his arms, and did not appear to be startled before being struck by the train. Based on this information, the examiner concluded that Sullivan committed suicide.[2] After reaching this conclusion, the examiner issued a certificate of death for Sullivan stating that his "manner of death" was "suicide" and that he was struck by a train "as a consequence" of "suicide." This certificate of death was received by the State Registrar on September 4, 1990, and corrected in part on October 1, 1990.

¶ 6.   On November 6, 1995, Brian Sullivan's mother, Malvern Sullivan, petitioned the circuit court under Wis. Stat. § 69.12 to find that the designation of "suicide" as the manner and cause of death on her son's certificate of death did not reflect the "actual facts" at

---

[2] At the evidentiary hearing, Paul Hibbard testified as follows:

Q.   So on the side of supporting suicide in this case what would you have listed?

A.   The conductor's statements, the interviews by the police officers of the—Mr. Sullivan's friends, the breakup of the girlfriend, and that was about it.

the time the certificate of death was filed. The circuit court conducted hearings during June and August of 1996, at which the Petitioner presented evidence she believed contradicted the medical examiner's conclusion that her son committed suicide.

¶ 7. At the hearing, the Petitioner presented evidence principally showing that her son lacked suicidal motive or intent. The testimony of friends and family showed that Sullivan was positive, upbeat, outgoing, fun-loving, gregarious, and active. The Petitioner presented evidence to counter the examiner's finding that Brian Sullivan was having financial, business, and personal problems. The Petitioner also showed that the doctor performing the autopsy specifically noted that injuries to Sullivan's right leg were consistent with Sullivan attempting to stand at the time he was struck by the train.

¶ 8. The Petitioner also proffered as evidence a pamphlet published by the Wisconsin Department of Transportation and the Wisconsin State Patrol entitled "Basic Training Program for Breath Examiner Specialist." The pamphlet contains information regarding the effects alcohol has on a person's judgment, emotions, and perception. The Respondent objected, arguing that the pamphlet was inadmissible hearsay. *See* Wis. Stat. § 908.02.[3] The circuit court sustained the objection on the ground that the pamphlet was hearsay and did not fit within the hearsay exception for public records and

---

[3] Wis. Stat. § 908.02 provides that "[h]earsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."

reports provided in Wis. Stat. § 908.03(8).[4] The Petitioner made an offer of proof.

¶ 9.  After the hearing, the circuit court issued a written decision denying the petition. The circuit court first concluded that under Wis. Stat. § 69.12(1) it sat as a reviewing court rather than as a finder of fact and could not order the certificate of death changed unless it found that the medical examiner's determination was "arbitrary and capricious." After it determined that the Petitioner failed to establish that the medical examiner's determination was arbitrary and capricious, the circuit court denied the petition. The Petitioner appealed the circuit court's denial and its refusal to admit into evidence the pamphlet. We accepted the court of appeals' request for certification.

■

¶ 10.  The first issue to consider is whether the circuit court applied the proper standard under Wis. Stat. § 69.12(1). This is a matter of statutory interpretation. Statutory interpretation is a question of law that this court reviews independent of the judgment of the circuit court. See Lake City Corp. v. City of Mequon, 207 Wis. 2d 155, 162–63, 558 N.W.2d 100 (1997). The goal of statutory interpretation is to ascertain the legislature's intent. See Stockbridge School Dist. v. DPI, 202

---

[4] Wis. Stat. § 908.03(8) provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> PUBLIC RECORDS AND REPORTS. Records, reports, statements, or data compilations, in any form, or public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Wis. 2d 214, 219, 550 N.W.2d 96 (1996). The main source for statutory interpretation is the plain language of the statute itself. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the language is clear, we may not look beyond the language of the statute to ascertain its meaning. *See Lake City Corp.*, 207 Wis. 2d at 164 (citing *Stockbridge School Dist.*, 202 Wis. 2d at 220).

¶ 11.   Wis. Stat. § 69.12(1) provides:

> If. . .a person with a direct and tangible interest in the vital record alleges that information on the vital record does not represent the actual facts in effect at the time the record was filed, the person may petition the circuit court of the county in which the event which is the subject of the vital record is alleged to have occurred. . . . *If the court finds that the petitioner has established the actual facts of the event in effect when the record was filed, the clerk of court shall report the court's determination to the state registrar. . . .*

*Id.* (emphasis added).

■

¶ 12.   The circuit court interpreted the language of Wis. Stat. § 69.12(1) as requiring it to sit as a reviewing court, reviewing the medical examiner's determination under the standard of review traditionally accorded to decisions of administrative agencies. In its decision denying the petition, the circuit court concluded that "the appropriate standard of review for the case herein and therefore for Wisconsin courts is to limit the court's review of the exercise of discretion to determining whether the medical examiner's decision was arbitrary or capricious." We disagree.

¶ 13.   By its plain language, Wis. Stat. § 69.12(1) prescribes a very limited role to the circuit court—that

of a factfinder. The court's scope of review under Wis. Stat. § 69.12(1) is not limited to facts underlying a certificate of death; it encompasses facts represented in all "vital records," including "certificates of birth, death, divorce or annulment, marriage documents and data related thereto." Wis. Stat. § 69.01(26). A person who files a petition under Wis. Stat. § 69.12(1) alleges only that the information in a vital record does not represent the actual facts existing at the time the vital record was filed. The relief sought by a petitioner is to have the circuit court enter the actual facts and order the state registrar to change the vital record. When considering a petition filed under this section, the circuit court's only role is to review the evidence presented by a petitioner and to determine whether the petitioner "has established the actual facts of the event in effect when the record was filed." Wis. Stat. § 69.12(1). If the circuit court finds that a vital record does not represent the actual facts, the court reports the actual facts to the state registrar. *See* Wis. Stat. § 69.12(1). The state registrar will then change the vital record to reflect the actual facts entered by the circuit court. *See* Wis. Stat. § 69.12(1), (4)(a).

¶ 14.   When entertaining a petition to review the facts represented in a certificate of death under Wis. Stat. § 69.12(1), a circuit court must consider and enter the "actual facts" existing at the time the certificate of death was filed. The actual facts may include the information contained in the certificate of death or other facts existing at the time the certificate of death was filed that were unavailable to or not considered by the party filing the certificate.

¶ 15.   The manner and cause of a person's death listed in a certificate of death are not administrative determinations. The information contained in a certifi-

cate of death, including the manner and cause of death, can be certified by a physician, a coroner, a medical examiner, or a circuit court, *see* Wis. Stat. §§ 69.18(2) and 69.19, depending on the circumstances of a particular case. The circuit court's review of the actual facts existing when a certificate was filed does not vary with the party certifying that certificate. Although the petition must include a certified copy of the original certificate of death, the person who certified that certificate need not be a party nor called as a witness. As with other information contained in a certificate of death, the manner and cause of a person's death, do not become administrative determinations simply because they were certified by a medical examiner. Accordingly, the actual manner and cause of Sullivan's death was a matter of fact for the circuit court to resolve.

¶ 16.   As a factfinder, the circuit court's principal determination is whether the petitioner has met his or her burden of proof. Wisconsin Statutes § 69.12 does not set forth a special burden of proof. Absent a special burden, we conclude that the appropriate burden of proof in this civil matter, as with other civil actions, is proof by the greater weight of the credible evidence. *See* Wis JI—Civil 200 (1991); *Kruse v. Horlamus Indus., Inc.*, 130 Wis. 2d 357, 362–63, 387 N.W.2d 64 (1986); *Jones v. Dane County*, 195 Wis. 2d 892, 926, 537 N.W.2d 74 (Ct. App. 1995); *accord Wyatt v. Williams*, 669 So. 2d 1380, 1382 (La. App. 1996). Accordingly, a petitioner under Wis. Stat. § 69.12(1) must prove by the greater weight of the credible evidence the actual facts existing at the time the certificate of death was filed.

¶ 17.   Wisconsin Stat. § 69.12(1) requires a petitioner to attach a certified copy of the original certificate of death. In reviewing the actual facts

existing at the time a certificate of death was filed, a circuit court must accord the information certified by a medical examiner a presumption of validity. This is a rebuttable presumption that the information on the certificate of death represents the actual facts in effect at the time the certificate was filed. Like other presumptions, this presumption then imposes upon the party against whom it is directed the burden of proving that the non-existence of the presumed facts is more likely than not. *See* Wis. Stat. § 903.01 In other words, the party petitioning the court under Wis. Stat. § 69.12(1) bears the burden of showing by the greater weight of the credible evidence that the facts contained in the certificate of death do not represent the actual facts in effect at the time the certificate of death was filed.

¶ 18.   In light of the plain language of Wis. Stat. § 69.12(1), we find unpersuasive the Respondent's argument that the Petitioner must establish that the medical examiner's findings were arbitrary and capricious. Rather, we conclude that the circuit court acts as a factfinder, independently reviewing the evidence presented by the Petitioner. The circuit court, however, must afford the findings in the certificate of death a presumption of validity and place on the Petitioner the burden of rebutting this presumption by the greater weight of the credible evidence. Consequently, we reverse the circuit court's order denying Malvern Sullivan's petition and remand this matter to the circuit court for further proceedings consistent with this opinion.

¶ 19.   The second issue is whether the circuit court erroneously exercised its discretion when it refused to allow into evidence a pamphlet published by the Department of Transportation and the Wisconsin

State Patrol entitled "Basic Training Program for Breath Examiner Specialist."

¶ 20.   A toxicology test showed that at the time of his death Sullivan had a blood alcohol concentration of .165% by weight. Before the circuit court, the Petitioner argued that this high level of alcohol concentration altered Sullivan's emotional state, judgment, and perception. The Petitioner alleged that the effects of the alcohol, rather than a desire to commit suicide, may have led to Sullivan's death. The Petitioner proffered the pamphlet to establish that the consumption of alcohol affects a person's judgment and perception and may create a feeling of euphoria.[5] The Respondent objected to the proffer, arguing that the pamphlet was inadmissible hearsay. The circuit court

---

[5] The pamphlet states, and provides statistical information showing, that, as the concentration of alcohol increases, the effects the alcohol has on an individual also increase and are magnified: "Increasing the alcohol concentration above 0.08% wt. results in further impairment of normal physical and mental faculties." *Basic Training Program for Breath Examiner Specialist* at D–18. The pamphlet explains:

> The first effect of alcohol is the impairment of judgment. Judgment is the general name given to various decision-making aspects of human behavior. . . .Alcohol also impairs an individual's self-evaluation, the ability to judge one's own behavior or performance in a particular situation. . . .Because of the induced state of euphoria, an intoxicated individual's perception of reality may be altered. Another aspect of judgment is that of risk assessment. Each person has the ability to determine what risks are acceptable to him and to understand the consequences of his actions. An intoxicated individual may accept risks which would be unacceptable when alcohol free. . . .Alcohol also impairs the hearing perception. Although no direct evidence has been shown on the physical mechanism of hearing, alcohol raises the minimum level of noise to which the person will respond.

*Id.* at D–18–19.

concluded that the pamphlet was hearsay and did not fall within the hearsay exception for public records and reports provided in Wis. Stat. § 908.03(8).

¶ 21. A circuit court's decision to admit or exclude evidence is discretionary, and an appellate court will not overturn a discretionary determination absent a showing that the circuit court erroneously exercised its discretion. *See Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980). We are mindful, however, that a misapplication or an erroneous view of the law constitutes an erroneous exercise of discretion. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). Accordingly, a court erroneously exercises its discretion if it bases its decision on an erroneous view of Wis. Stat. § 908.03(8). We conclude that the circuit court's refusal to accept this pamphlet into evidence in this case was an erroneous exercise of the court's discretion.

¶ 22. Wisconsin Stat. § 908.03(8) excepts public records and reports from the general prohibition against hearsay. Under § 908.03(8) public records and reports include "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth. . .matters observed pursuant to a duty imposed by law, or. . .factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

¶ 23. Applying the hearsay exception in Wis. Stat. § 908.03(8), the court of appeals has previously found admissible a blood alcohol chart contained in the same training pamphlet proffered by the Petitioner in this case. *See State v. Hinz*, 121 Wis. 2d 282, 288–89, 360 N.W.2d 56 (Ct. App. 1984). In *Hinz*, a defendant

appealed a conviction of intoxicated use of a motor vehicle. On appeal, the defendant argued that the circuit court had erred by excluding a blood alcohol chart included in the training pamphlet, which he proffered to determine his blood alcohol concentration on which he was arrested. The court of appeals reversed, finding, *inter alia*, that the chart fit within the hearsay exception in Wis. Stat. § 908.03(8). *See id.* at 288.

¶ 24.　Similarly, the court of appeals has allowed into evidence under Wis. Stat. § 908.03(8) a different Department of Transportation handbook containing information that was in form and content similar to the information offered in this case. *See Lievrouw v. Roth*, 157 Wis. 2d 332, 459 N.W.2d 850 (Ct. App. 1990). In *Lievrouw*, the plaintiff sought to introduce findings in the department's Wisconsin Motorists Handbook as evidence of the effects alcohol has on a person's ability to drive. The circuit court accepted the entire handbook into evidence and allowed the plaintiff's attorney to read to the jury excerpts therefrom, including the document's assessment of alcohol's effect on a person's driving ability. *See id.* at 354.

¶ 25.　On appeal, the court of appeals in *Lievrouw* affirmed. The court found (1) that the handbook was published by a public agency, the Department of Transportation, and (2) that the department is charged with the administration and enforcement of the laws relating to the licensing of drivers, *see id.* at 355 (citing Wis. Stat. § 343.02), and with the responsibility of educating drivers about the dangers of driving while under the influence of alcohol, *see id.* (citing Wis. Stat. § 346.637). Accordingly, the court concluded that the handbook

471

was admissible under the public records exception in Wis. Stat. § 908.03(8). *See id.*[6]

¶ 26.  We see no reason to treat the training pamphlet proffered in this case any differently than the court of appeals treated the reports in *Hinz* and *Lievrouw*. The pamphlet is a compilation of a public agency, the Wisconsin Department of Transportation. It contains information on the pharmacology and toxicology of alcohol and on the specific effects of alcohol. The findings and statistical data in the pamphlet pertaining to the effects alcohol has on a person are factual and were made pursuant to the department's duty to administer and enforce the laws relating to the licensing of drivers, *see* Wis. Stat. § 343.02, and its duty to employ and train state traffic officers, *see* Wis. Stat. §§ 110.065 and 110.07. Accordingly, excerpts from the pamphlet concerning alcohol and its effects on a person's judgment, emotions, and perception satisfy the requirements of the hearsay exception for public records and reports contained in Wis. Stat. § 908.03(8).

¶ 27.  We therefore conclude that the circuit court erroneously exercised its discretion by refusing to accept the training pamphlet into evidence as inadmissible hearsay. On remand, the circuit court should allow the Petitioner to introduce the pamphlet into evidence.

*By the Court.*—The order of the Waukesha County Circuit Court is reversed and cause remanded.

---

[6]*Accord Roth v. Black & Decker, U.S., Inc.*, 737 F.2d 779, 783 (8th Cir. 1984) (concluding that reports published by the Consumer Products Safety Commission were admissible under Rule 803(8)(C) of the Federal Rules of Evidence, the federal analog to Wis. Stat. § 908.03(8)).